IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARTHA A. DOWLING, | : |
| | : |
| Plaintiff, | : Case No. 2:05-CV-0098 |
| | : |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : |
| LITTON LOAN SERVICING, LP, | : Magistrate Judge King |
| | : |
| Defendant. | : |

## AMENDED FINAL JUDGMENT[1]

### I. INTRODUCTION

This matter is before the Court as a result of a bench trial held in the above-captioned case. Based on the findings of fact and conclusions of law stated below, this Court finds Defendant liable for violating sections 1692e and 1692c of the FDCPA.[2] The Court awards Plaintiff $1,000 in statutory and $25,000 in actual damages ($26,000 total) plus attorneys' fees and costs. Plaintiff has not established that Defendant violated any other section of the FDCPA, the OMLA, the RESPA, or the OCSPA.

### II. Procedural History

On January 28, 2005, Plaintiff filed this action in federal court. Plaintiff's complaint alleges that it is entitled to judgment from Defendant based upon Defendant's alleged violations

---

[1]This Amended Judgment corrects this Court's Final Judgment dated June 1, 2007. In the opinion of June 1, 2007, the Court, by inadvertence, stated that the damages were $11,000 in line 21 of the Court's conclusions of law. In the introduction and conclusion of that order, the Court correctly states that the total damages were $26,00 plus costs and attorney's fees. This order corrects line 21 to conform with the findings of this Court.

[2]This ruling affirms the Court's Opinion and Order dated December 1, 2006 (hereinafter "summary judgment opinion").

of the following statutes: the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Real Estate Settlement Procedures Act (the "RESPA"), 12 U.S.C. 2601 *et seq.*; the Ohio Mortgage Loan Act (the "OMLA"), Ohio Revised Code § 1321.51 *et seq.*; and the Ohio Consumer Sales Protection Act (the "OCSPA"), Ohio Revised Code § 1345.01 *et seq.* Plaintiff seeks relief in the form of compensatory and actual damages, statutory damages, treble damages, punitive damages, and an award of attorney's fees and costs.

On June 28, 2006, Defendant filed a Motion for Partial Summary Judgment on Plaintiff's claims under the OCSPA, claiming that it is exempt from such actions. Plaintiff responded, and later filed a Motion for Partial Summary Judgment on all of her claims against Defendant. The Court denied Defendant's motion. The Court granted in part and denied in part Plaintiff's motion. The Court granted Plaintiff summary judgment on her claims under Sections 1692c and 1692e of the FDCPA, but denied summary judgment with respect to her claims under Sections 1692f and 1692h. This Court also denied summary judgment with respect to her claims under the RESPA, OMLA, and OCSPA. Plaintiff subsequently filed a Motion for Reconsideration which the Court denied.

This Court conducted a bench trial from January 8, 2007 until January 11, 2007. Both parties submitted post-trial briefs detailing their proposed findings of fact and conclusions of law. Thus, this matter is ripe for the Court to issue judgment.

### III. Findings of Fact

1.) On March 31, 1998, Plaintiff Martha Dowling (hereinafter, "Plaintiff") and her late husband[3] entered into a homeowner refinancing agreement with lender national Consumer Services Corp**.** (hereinafter "the Loan").

---

[3]Plaintiff's husband died as the result of an automobile accident that occurred on November 4, 2001.

2.) The Loan was for $68,000.

3.) According to the original promissory note which Plaintiff signed in connection with the Loan, Plaintiff agreed to repay the note holder on the sixth day of each month, beginning on May 6, 1998. She also agreed to pay 10.65% interest on the unpaid principal until she paid the principal in full.

4.) As a result of the above formula, Plaintiff's original monthly payment on this loan was $629.66.

5.) Pursuant to the terms of the Loan, regardless of amounts previously paid, a payment was due every month until the loan is paid in full.

6.) The Loan was a "daily simple interest loan" which requires a computation of any interest due on a daily basis.

7.) Because the Loan accrued interest on a daily basis, any late payments resulted in an interest charge which caused the Loan to be delinquent by more than simply the missed monthly payment.

8.) Initially, the Loan was serviced by a company doing business under the name of Fairbanks Capital Corp. (hereafter, "Fairbanks").

9.) Fairbanks now operates its business under the name "Select Portfolio Servicing, Inc." Plaintiff has instituted a similar federal court action against Fairbanks, which is currently pending before this Court. That case is styled *Martha A. Dowling v. Select Portfolio Servicing, Inc.*, et al., Case No. C2-05-0049.

10.) Subsequently, effective on March 22, 2004, Fairbanks transferred the servicing on the Loan to Defendant Litton Loan Servicing, LP (hereafter, "Defendant").

11.) On January 27, 2004, before Fairbanks transferred servicing on the Loan to Defendant, Plaintiff's counsel mailed a letter to Fairbanks disputing any alleged delinquency or default claimed by Fairbanks concerning Plaintiff's home mortgage loan.

12.) That letter also gave notice to Fairbanks that Plaintiff was represented by counsel, and it demanded specific actions from Fairbanks concerning Plaintiff's account. In particular, Plaintiff's counsel urged Fairbanks to alter Plaintiff's account records to show that Plaintiff's mortgage was current, and to correct any reports of delinquency made to any consumer reporting agency.

13.) Fairbanks never responded to this letter.

14.) After receiving the Loan, Defendant's Quality Control Department performed a routine servicing of the Loan and determined that the Loan was in default.

15.) At the time it acquired servicing responsibility, Defendant represented that Plaintiff's mortgage loan was in default in the amount of $67,750.39.

16.) On the day it took over the servicing of the Loan, Defendant mailed Plaintiff directly a collection demand.

17.) Over the next several days, Defendant's employees telephoned Plaintiff directly five separate times: two of Defendant's employees, identified on Defendant's composite report for Plaintiff's account as "rwilson" and "dkennedy," telephoned Plaintiff directly on April 1, 2004; employee "mejohnso" telephoned Plaintiff directly on April 12, 2004; employee "emartine" telephoned Plaintiff directly on April 13, 2004; and employee "kljones" telephoned Plaintiff directly on April 16, 2004.

18.) During each of those telephone conversations, Plaintiff indicated to Defendant's employees that she was represented by counsel.

19.) On April 15, 2004, Plaintiff's counsel mailed, and Defendant received, a letter indicating that Plaintiff was being represented by an attorney in the matter and that Defendant should not contact Plaintiff directly.

20.) On April 22, 2004, Defendant mailed a computer-generated collection demand to Plaintiff directly.

21.) On May 4, 2004, Defendant mailed a document titled "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" to Plaintiff's home address.

22.) On May 24, 2004, Defendant mailed another "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" letter directly to Plaintiff's home address.

23.) On June 8, 2004, Defendant sent another to Plaintiff, but directed all subsequent correspondence to Plaintiff's attorney.

24.) Plaintiff's correspondence was misleading and confusing. For example, in a letter dated April 22, 2004, Defendant stated that Plaintiff was "**seriously past due** for the 3/6/2004 and 4/6/2004 mortgage payments totaling $1,659.34." (Plaintiff's Exhibit 31).

25.) As noted in this Court's summary judgment opinion, by Defendant's own admission, however, it had received a loan payment from Plaintiff on April 6, 2004, which it applied to the March 2004 payment period.[4]

---

[4]The confusion likely occurred because of the way Defendant characterizes its payment periods. For example, if payments are due on the 6th of each month, and a borrower has missed her January and February payments, but then remits a payment on March 4th, she is only "1 month behind." Then on March 6th, when the next payment is due, she reverts to being 2 months behind.

6

26.) Nonetheless, as more fully discussed below, the payment statements produced by Fairbanks and Defendant indicate that Plaintiff was in fact two months behind on her mortgage payments.

27.) At trial, Plaintiff also testified that Defendant and Fairbanks improperly charged her certain fees.

28.) Plaintiff is incorrect. Because she was behind in her payments, the Loan authorized Fairbanks to charge her account certain fees in connection with their collection costs.

29.) Under paragraph 7 of Plaintiff's mortgage, Fairbanks properly included certain "servicer fees" included in the amount of her default. These fees included $450 in bankruptcy attorney fees, $75 in bankruptcy costs, and $11.35 for a property inspection.

30.) In addition, the Loan permits the lender to make escrow advances to pay hazard insurance and property taxes when they are not paid by the borrower.

31.) At the time Defendant received the Loan, Plaintiff owed $245.97 for escrow advances made by Fairbanks.

32.) Plaintiff reduced her escrow deficiency by adding $42.61 to each of the three monthly payments she made to Defendant.

33.) Plaintiff, at all times, maintained that she was current on her loan and that Fairbanks and Defendant erroneously claimed that she was two months delinquent on her payments.

34.) Accordingly, on April 15, 2004, Plaintiff's counsel sent a request to Defendant asking it to provide him with an accounting of Plaintiff's payment history. (Plaintiff's Exhibit 32)

35.) Defendant responded to Plaintiff's request for an accounting on April 26, 2004. (Plaintiff's Exhibit 32)

36.) At minimum, Defendant's response letter was confusingly worded. The letter stated that "this loan is contractually due for the 3/6/04 payment and the total amount due is $1,659.34," but did not, in any way, explain the methodology which Defendant used to calculate the amount of the delinquency. (Plaintiff's Exhibit 32)

37.) The letter also stated that the Loan as brought current "for the first time in May 2002" with a payment resulting from Plaintiff's Chapter 13 bankruptcy plan. The letter further noted that Plaintiff's "loan status continued current until June of 2001 when no payment was received and again in October of 2003 when no payment was received. This loan has continued to be delinquent by two (2) payments since that time." (Plaintiff's Exhibit 32)

38.) This letter is inaccurate. It is impossible for the Loan to be brought current in May 2002 and then be sent into default by a missed payment in June 2001 – a payment which was due 11 months prior to the loan being brought current. Ostensibly, this could have been a typographical error and Defendant could have meant that Plaintiff missed her June 2003 and her October 2003 payments.

39.) On May 20, 2004, Plaintiff's counsel wrote Defendant to dispute the fact that she was in default on the Loan. He included "proof" that Plaintiff paid the required amount on the Loan each month between January 2003 and March 2004 in the form of copies of Plaintiff's checks to Defendant for this period. (Plaintiff's Exhibit 34)

40.) In response to Plaintiff's letter and proof of payment, on June 2, 2004, Defendant sent another letter to Plaintiff's counsel (Plaintiff's Exhibit 37).

41.) The letter states that "we have reviewed the check copies you included with your letter and have accounted for all of them. We now find that we *viewed the payment history of Fairbanks Capital incorrectly* in light of this new information." (emphasis added) (Plaintiff's Exhibit 37)

42.) The letter further notes that the Plaintiff's Chapter 13 funds not only brought the loan current in May of 2002, but actually paid it forward. The letter then states that "this status [being paid in advance] continued through 8/6/02 when funds were received and applied to the 9/6/02 payment." This sentence is ambiguous. It is unclear if Defendant meant that the Chapter 13 loan payment paid the loan through 9/6/02, or if the Chapter 13 payment paid the loan forward through some unspecified date and then Plaintiff's subsequent monthly payments brought the loan forward through 9/9/02. (Plaintiff's Exhibit 37)

43.) The letter also remarked that "Fairbanks did not receive a payment in the months of September or October 2002" – and that these were the missing payments in question and not the June 2001 and October 2003 payments as noted in Defendant's April 26, 2004 letter.

44.) The records offered into evidence at trial show that Defendant's second accounting is also incorrect. As the records reflect, and as Defendant's representative admitted at trial, Plaintiff failed to make her October 2002 payment to Fairbanks but did in fact make a timely payment that was applied to the September 2002 accounting period. (Transcript pgs. 351-52.)

45.) The payment records and trial testimony, however, indicate that Plaintiff's October 2003 payment checked was returned "NSA" – i.e. the check bounced.

46.) Defendant did not send Plaintiff or her attorney any notice that her October 2003 had bounced.

9

47.) Moreover, as noted above, Defendant's June 2, 2004 letter stated that Defendant had reviewed Plaintiff's payments for 2003, and "accounted for" all of them. The June 2, 2004 letter did not indicate that Defendant had rejected Plaintiff's October 2003 payment for insufficient funds. Therefore, this letter was misleading.

48.) Nonetheless, due to Plaintiff's missed payment in October 2002 and bounced check in October 2003, at the time Defendant took over the servicing of the Loan, Plaintiff was two months in default.

49.) In June of 2004, as a result of her difficulties with Defendant, Plaintiff decided to refinance the Loan with Harvest Federal Credit Union (hereinafter "Harvest").

50.) On June 17, 2004, Defendant prepared a payoff statement for the loan.

51.) On June 30, 2004, Harvest paid Defendant in full and refinanced Plaintiff's loan at a new, fixed interest rate of 5.83% with a term of 30 years.

52.) Plaintiff disputes certain fees which Defendant charged to Plaintiff as part of the payoff of the Loan.

53.) Aside from the remaining principal balance of the Loan, $65,045.55, which was inclusive of Plaintiff's two missed payments, Defendant charged Plaintiff in the payoff statement:

    a) $2,875.01 in unpaid interest;

    b) $377.76 in late fees;

    c) $118.41 in escrow fees ($245.67 inherited from Fairbanks minus Plaintiff's three payments of $42.61);

    d) $15 priority processing fee because Plaintiff requested the payoff quote on an expedited basis;

    e) $9 property inspection fee;

    f) $536.35 in previous servicer expenses (these expenses were inherited from Fairbanks and included $450 in bankruptcy attorney fees, $75 in bankruptcy costs, and $11.35 for a property inspection);

    g) $36 recording fee which Defendant incurred to record the mortgage; and

    h) $10 quote fee which Defendant typically assesses when it processes a payoff.

54.) All of these *types* of fees were proper under the terms of the Loan, its accompanying documents, and applicable law, largely due to the fact that Plaintiff was in default on the Loan.

55.) With the exception of the late fees and unpaid interest, Plaintiff did not offer any credible evidence that the *amounts* of these fees were incorrect.

56.) It is possible that Defendant overcharged Plaintiff in late fees and interest.

57.) As noted above, Plaintiff missed her October 2002 and October 2003 payments. If, however, Fairbanks erroneously used September 2002 and October 2002 as the missed payment dates, Plaintiff may have incurred excess late fees and interest fees.

58.) Defendant relied on Fairbanks' accounting for the majority of late fees and interest charged to Plaintiff in the payoff statement. If any error did occur in regards to the interest or late fees assessed against Plaintiff, it was Fairbanks and not Defendant who assessed the improper fees. Defendant did not have adequate reason to believe that Fairbanks accounting was inaccurate

59.) Plaintiff did not produce any witnesses from Fairbanks.

60.) Plaintiff did not produce evidence which showed that Fairbanks used incorrect dates to calculate any late fees or interest charged to Plaintiff.

61.) Therefore, this Court must assume that all late charges and interest charges on the payoff statement were proper.

62.) Plaintiff also contends that Fairbanks improperly charged Plaintiff over $4K in interest and fees which were not authorized by Plaintiff's Chapter 13 plan. Plaintiff contends that these unauthorized fees caused the Loan to accrue unauthorized interest which Defendant quoted in the payoff statement.

63.) Plaintiff did not support these allegations with evidence at trial. Moreover, even if her contentions are true, Plaintiff did not adequately communicate to Defendant that she felt that Fairbanks had improperly applied the funds stemming from Plaintiff's Chapter 13 plan. As such, Defendant had no reason to calculate the payoff statement in a different manner.

64.) As a result of Defendant's collection efforts, specifically the aforementioned repeated phone calls and overdue notices, Plaintiff suffered emotional distress, anxiety, and depression.

65.) These ailments caused Plaintiff to withdraw from activities at her church, workplace, and household.

66.) Plaintiff's increased stress also caused her to experience insomnia.

### IV. Conclusions of Law[6]

A. <u>Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*</u>

---

[5]This Court adopts herein all conclusions of law reached in its summary judgment opinion in this case. Specifically, the Court found that the OMLA, RESPA, FDCPA, and OSCPA apply to Defendant's actions in this case.

[6]This Court will address only those claims which Plaintiff raises in her post-trial brief. All other claims will be considered dropped and judgment will be entered for Defendant. Specifically, Plaintiff does not address her claims under RESPA or certain sections of the FDCPA.

1.) 15 U.S.C. § 1692c provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address[.]" 15 U.S.C. § 1692c(a)(2).

2.) In its summary judgment opinion, this Court found Defendant liable for violating 15 U.S.C. § 1692e(2) because Defendant communicated directly with Plaintiff after it had knowledge that she was represented by counsel. The evidence at trial supports this conclusion.

3.) 15 U.S.C. § 1692e provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2)  The false representation of–(A) the character, amount, or legal status of any debt. (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt;
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e.

4.) In its summary judgment opinion, this Court found Defendant liable for violating 15 U.S.C. § 1692e(2) because Defendant's communications mislead Plaintiff as to the character and status of her debt.

5.) Specifically, the Court noted that Defendant's April 22, 2004 communication was misleading as it misrepresented the amount of payments in which Plaintiff was in default. The Court did not find in its opinion that Plaintiff was in fact only one month in default during April 2004. Rather, the Court found that even Defendant seemed confused as to when and by how much Plaintiff was

13

in default.[7]  The evidence at trial, however, showed that when Defendant acquired the loan, Plaintiff was two months delinquent on her mortgage payments.  Nevertheless, almost all of Defendants communications to Plaintiff were misleading and characterized the nature of her delinquency incorrectly.  By this Court's count, Defendant has offered three different theories regarding when Plaintiff's account became deficient.  First, in its April 26, 2004 communication, Defendant stated that Plaintiff missed her June 2001 and October 2003 payments.  Second, in its June 2, 2004 communication, Defendant stated that Plaintiff missed her September 2002 and October 2002 payments.  Third, at trial, Defendant's representative contended that she made her September 2002 payment but missed her October 2002 payment and bounced a check in October 2003.  This last theory stands in direct conflict with Defendant's statement in the June 2, 2004 letter which informed Plaintiff that it had verified all her payments for 2003.  Thus, because the trial evidence clearly showed that Defendant mischaracterized the status of her debt, this Court reaffirms its summary judgment ruling that Defendant violated 15 U.S.C. § 1692e(2).

7.) In its summary judgment opinion, this Court held Defendant liable for violating 15 U.S.C. § 1692e(5) because it found that the amount Defendant claimed Plaintiff was delinquent in Defendant's formal notices, dated May 4, 2004 and May 24, 2004, was inaccurate.  This Court based its decision largely on either erroneous or poorly-stated information in Defendant's own briefings.  After trial, however, this Court has concluded that Plaintiff was in fact delinquent by two months, and therefore, the delinquency figures in these notices were accurate.  Thus, this Court finds that Defendant is not liable for a violation of 15 U.S.C. § 1692e(5).

---

[7]Defendant's response brief at the summary judgment stage incorrectly implied that Defendant was admitting that Plaintiff was delinquent by only one month in her mortgage payments.  Defendant corrected this mistake with ample evidence at trial.

14

8.) Section 1692f provides, *inter alia*, that a debt collector may not use any unfair or unconscionable means to collect any debt, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

9.) Plaintiff's allegations against Defendant pursuant to 15 U.S.C. § 1692f all relate to purportedly unauthorized charges that Defendant assessed against Plaintiff when she refinanced her home mortgage loan through Harvest Federal Credit Union and paid off Defendant's entire payoff quote for $68,222.81.

10.) Specifically, Plaintiff's contention that Defendant violated § 1692f(1) of the FDCPA arises from disputed amounts Defendant charged Plaintiff in its payoff statement, including the following: (1) attorney fees and costs for Plaintiff's Chapter 13 bankruptcy proceeding; (2) "Prior Servicer Fees"; (3) interest due from March 14, 2004; (4) and late charges and deferred late charges.

11.) As noted in the facts section, supra, Plaintiff did not prove, by a preponderance of the evidence, that Defendant acted improperly in charging her these amounts. Thus, this Court finds that Defendant did not violate § 1692f(1). Moreover, even if these amounts were in error, it was Fairbanks, not Defendant, that assessed most of these fees. Plaintiff did not offer evidence which proved that Defendant had adequate reason to dispute the figures given to it by Fairbanks.

12.) The type and amount of damages a Plaintiff may recover for a violation of the FDCPA is provided in 15 U.S.C. § 1692k.

13.) 15 U.S.C. § 1692k provides in relevant part:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of any actual damage sustained by such person as a result of such failure[,] . . . such additional damages as the court may allow, but not exceeding $1,000[, and] . . . the costs of the action, together with a reasonable attorney's fee as determined by the court[.]

15 U.S.C. § 1692k(a).

14.) In its summary judgment opinion, the Court awarded Plaintiff $1,000 in statutory damages after it granted Plaintiff summary judgment on its claims that Defendant violated sections 1692c and 1692e of the FDCPA. *See Wright v. Fin. Serv. of Norwalk*, 22 F.3d 647, 651 (6th Cir. 1994) (holding that "15 U.S.C. § 1692k(a)(2)(A) limits a plaintiff's additional damages to $1,000 'per proceeding' rather than 'per violation.'"); *see also Woolfork v. Van Ru Credit Corp*, 783 F.Supp. 724, 727 n.3 (D. Conn. 1990) (finding that an award of statutory damages in an FDCPA action does not require the proof of actual damages).

15.) This Court reaffirms its award of $1000 to Plaintiff because the evidence presented at trial confirmed that Defendant violated Section 1692c and 1692e.

16.) In its summary judgment opinion, the Court deferred the question of the amount of actual damages Plaintiff is entitled to until after trial.

17.) The "actual damages" recoverable under § 1692k(a) may include compensatory damages for emotional distress, humiliation, and embarrassment. *See Boyce v. Attorney's Dispatch Service*, 1999 WL 33495605, at *1 (S.D. Ohio April 27, 1999). Any out-of-pocket or other consequential losses are also compensable under § 1692k(a) as "actual damages."

18.) At trial, Plaintiff showed that Defendant's repeated harassing phone calls and letters caused her emotional distress, stress, and other mental vexations. Also, Defendant's inability accurately to explain in writing to Plaintiff which payments she missed caused her emotional turmoil. While it is hard to put an exact dollar figure on a person's mental well-being, given that Plaintiff established that Defendant's egregious collection activities caused her great pain, this Court feels that substantial damages are in order. As a result, this Court awards Plaintiff $25,000 in actual damages.

19.) Plaintiff did not prove that she suffered any consequential damages as a result of Defendant's actions.

20.) In addition, because of the callous and wanton nature of Defendant's collection methods, this Court finds it appropriate under 15 U.S.C. § 1692k to award Plaintiff her attorney's fees and costs.

21.) In toto, this Court awards Plaintiff $26,000 in damages ($1,000 statutory and $25,000 actual) plus attorney's fees and costs.

22.) By failing to assert them in her post-trial brief, Plaintiff has waived any other claims arising from any sections of the FDCPA not discussed above.

B.) Ohio Mortgage Loan Act, Ohio Revised Code § 1321.51 *et seq.*

1.) Plaintiff argues that Defendant violated the Ohio Mortgage Loan Act when it collected, as part of the $68,222.81 paid from Plaintiff to Defendant to refinance her home mortgage, excessive interest and other unauthorized charges.

2.) The OMLA provides restrictions on the interest and other charges that a registrant may assess upon a borrower. *See* OHIO REV. CODE § 1321.57. In particular, subsection 1321.57(c)

17

designates how a registrant should charge a borrower. *See* OHIO REV. CODE § 1321.57(c). Similarly, subsection 1321.57(H) restricts a registrant's authority to charge a borrower for miscellaneous fees in connection with the borrower's account. *See* OHIO REV. CODE § 1321.57(H). Finally, subsection 1321.57(L) entitles a registrant to collect a default charge on any scheduled installment not paid in full, if the loan contract so provides. *See* OHIO REV. CODE § 1321.57(L).

3.) As held above, Plaintiff did not prove by a preponderance of the evidence that Defendant collected any unlawful interest or fees from her. As such, Plaintiff's OMLA claim fails.

C.) <u>Ohio Consumer Sales Protection Act, Ohio Revised Code § 1345.01 *et seq.*</u>

1.) The OCSPA states in relevant part:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.

OHIO REV. CODE § 1345.02(A)

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

OHIO REV. CODE § 1345.03(A)

2.) The OCSPA provides for treble damages in certain instances. *See* OHIO REV. CODE § 1345.09(B).

3.) According to Plaintiff, Defendant violated the OCSPA when it collected, as part of the $68,222.81 paid from Plaintiff to Defendant to refinance her home mortgage loan, excessive interest and other unauthorized charges.

4.) Plaintiff also avers that Defendant committed an unconscionable act when it misstated the amount of Plaintiff's delinquency.

18

5.) As held above, Plaintiff did not prove by a preponderance of the evidence that Defendant collected any unlawful interest or fees from her.

6.) Moreover, this Court does not find the misstatements made by Defendant in its notices to Plaintiff to rise to the level of unconscionability.

7.) As such, Plaintiff's OCSPA claim fails.

8.) Plaintiff does not raise any other claims in her post-trial brief. Thus, any claims brought in the complaint but not addressed herein are considered waived and judgment on them is entered for Defendant.

## V.  Conclusion

For the aforementioned reasons[8], this Court finds Defendant liable for violating sections 1692e and 1692c of the FDCPA. The Court awards Plaintiff $1,000 in statutory and $25,000 in actual damages ($26,000 total) plus attorneys' fees and costs. Plaintiff has not established that Defendant violated any other section of the FDCPA, the OMLA, the RESPA, or the OCSPA. Thus, the Court finds for the Defendant on those counts. The Clerk of the Court is hereby instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

  **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: June 4, 2007**

---

[8] This Court actually found Defendant liable for violating these two sections in its summary judgment opinion. This order simply reaffirms that opinion in this respect.